IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PETHINAIDU VELUCHAMY,
PARAMESWARI VELUCHAMY, ARUN
K. VELUCHAMY, ANU VELUCHAMY
and the VELUCHAMY FAMILY
FOUNDATION,

                Plaintiffs,

v.

FEDERAL DEPOSIT INSURANCE
CORPORATION, in its capacity as receiver
for Mutual Bank, Harvey, Illinois, and in its
corporate capacity,

                Defendant.

Case No. 10-cv-00648

Hon. William J. Hibbler

## PLAINTIFFS' OPPOSITION TO THE FDIC-CORPORATE'S MOTION TO DISMISS

As and for their Response in Opposition to the Motion to Dismiss ("Motion") the

Complaint filed by the Federal Deposit Insurance Corporation, in its corporate capacity ("FDIC-

Corporate"), Plaintiffs Pethinaidu Veluchamy, Parameswari Veluchamy, Arun K. Veluchamy,

Anu Veluchamy and the Veluchamy Family Foundation (collectively, "Plaintiffs") state:

## I.    INTRODUCTION

FDIC-Corporate seeks dismissal of the Complaint, with prejudice, despite Plaintiffs'

well-pled allegations of wrongdoing by FDIC-Corporate prior to the closure of Mutual Bank of

Harvey, Illinois (the "Bank") and the appointment of the FDIC as the Bank's receiver ("FDIC-

Receiver").  According to FDIC-Corporate, the Complaint should be dismissed because:

- FDIC-Corporate's alleged wrongdoing is not reviewable under Section 702 of the APA;

- Plaintiffs seek only "money damages" under Section 706 of the Administrative Procedures Act (the "APA"), which is impermissible;

- Plaintiffs lack standing under Article III of the United States Constitution; and

- Plaintiffs lack "prudential standing" under the "zone of interest test."

These arguments are without merit.  The relief sought by Plaintiffs is both "allowable" and "available" under the APA.  Additionally, Plaintiffs have Article III and prudential standing because they:  (i) have been injured in fact, and (ii) can clearly satisfy the "zone of interest test."

At bottom, FDIC-Corporate's Motion represents a position that FDIC-Corporate's conduct, no matter how arbitrary, capricious or improper, is not reviewable by anyone, including this Court.  However, federal courts have made clear that FDIC-Corporate is not some "sacred cow which may graze upon the rights of others at will, unchecked by the courts."[1]  Plaintiffs should be allowed to proceed on the merits of their claims.  Respectfully, FDIC-Corporate's Motion should be denied.

## II.   SUMMARY OF THE ALLEGATIONS

The salient facts pled in the Complaint are as follows:

- Plaintiffs owned 93.2 percent of First Mutual Bancorp of Illinois, Inc. ("First Mutual"), which owned 100 percent of the Bank;

- As the major stakeholders in First Mutual, Plaintiffs participated in substantial efforts to restore the Bank to a "well capitalized" position after FDIC-Corporate downgraded the Bank to "adequately capitalized";

- In furtherance of those efforts: (i) Plaintiffs Pethinaidu and Parameswari Veluchamy purchased $18.6 million of the Bank's Series A and B Subordinated Notes (the "Notes") and $5 million in First Mutual shares, (ii) Plaintiff Pethinaidu Veluchamy signed a guaranty on the Bank's payment of an additional $5 million of the Bank's Notes, (iii) Plaintiff Anu Veluchamy purchased $1.7 million of First Mutual shares, (iv) Plaintiff Arun K. Veluchamy purchased $600,000 of First

---

[1] *See Chemical Futures & Options, Inc. v. Resolution Trust Corp.*, 832 F. Supp. 1188, 1193 (N.D. Ill. 1993) (citation and internal quotations omitted).

Mutual shares, and (v) Plaintiff Veluchamy Family Foundation purchased $2 million of First Mutual shares;

- First Mutual contributed substantially all of the proceeds from Plaintiffs' purchase of First Mutual shares to the Bank;

- FDIC-Corporate gave Plaintiffs false hope about the Bank's financial condition that caused them to undertake the efforts to restore the Bank to "well capitalized" status;

- The Bank's Board determined that it would be in the best interests of the Bank to redeem the Notes as long as Plaintiffs Pethinaidu and Parameswari Veluchamy agreed to place the proceeds from the redemption of the Notes in the Bank as demand deposits bearing no interest;

- The Bank requested that it be allowed to redeem the Notes and advised FDIC-Corporate that, as a condition of the redemption, the Bank would insist that the proceeds of the redemption remain at the Bank in a demand deposit for at least as long as the remaining term of the Notes;

- The Bank twice sought permission from FDIC-Corporate to implement this plan of redemption, and in each such request represented to the FDIC that the plan was in the best interests of the Bank as determined by the Bank's Board of Directors;

- FDIC-Corporate failed to respond to these requests even though the Bank requested immediate action;

- FDIC-Corporate was improperly motivated to deny the requests because of its desire to lessen the impact of the Bank's failure on the Deposit Insurance Fund; and

- If FDIC-Corporate had properly acted on the requests, then the proceeds from the Notes would have become deposits and, as such, would have been transferred to United Central Bank, Garland, Texas (which purchased all of the Bank's deposits from FDIC-Receiver) without loss.

While FDIC-Receiver, which moved separately to dismiss the Complaint, acknowledges these factual allegations in its Memorandum, FDIC-Corporate overlooks and/or ignores them.

Instead, FDIC-Corporate engages in misdirection and relies improperly on matter that is outside the pleadings.[2]  For example, on page 5 of its Memorandum ("Memo."), FDIC-Corporate

---

[2]  The Bank's closing would have come as no surprise to FDIC-Corporate, which (as alleged in the Complaint) communicated directly with the Illinois Department of Financial and

(cont'd)

states that IDFPR closed the Bank "[a]s FDIC-Corporate was considering th[e] application [for redemption of the Notes]."   (FDIC-Corporate's Memo. at 5.)   No such allegation appears anywhere in the Complaint.   On the contrary, FDIC-Corporate never informed Plaintiffs or the Bank that it was "considering" the request.

Instead, FDIC-Corporate remained silent and waited for the Bank to be closed, which allowed FDIC-Receiver to take full control of the Bank and use Plaintiffs' investment, including the Notes, to offset loss to the Deposit Insurance Fund.   FDIC-Corporate's reliance on such matters not only shows that FDIC-Corporate's Motion is improper, but it also shows that Plaintiffs have stated a claim insomuch as FDIC-Corporate is now trying to excuse its alleged wrongdoing.

## III.   ARGUMENT

### A.   Standard of Review

Federal Rule of Civil Procedure 8 governs the sufficiency of pleadings in the federal courts.   Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief."   Fed. R. Civ. P. 8(a)(2).

Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, — U.S. —, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*   The federal notice pleading regime is intended to "focus litigation on the merits of

---

(cont'd)
Professional Regulation (the "IDFPR") and would have carefully scheduled all events associated with the bidding process for the deposits of the Bank as soon as the Bank would be closed.

a claim rather than on technicalities that might keep plaintiffs out of court." *Lozano v. Twentieth Century Fox Film Corp.*, — F. Supp. 2d —, No. 09-cv-6344, 2010 WL 1197884, at *1 (N.D. Ill. Mar. 23, 2010) (quoting *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009)).

    **B.**    **The Relief that Plaintiffs Seek Is "Allowable" and "Available" under Sections 702 and 706 of the APA**

FDIC-Corporate's first argument in support of its Motion is that the relief sought by Plaintiffs is neither "allowable" nor "available" under the APA, 5 U.S.C. §§ 701–706. (FDIC-Corporate's Memo. at 7–10.) Specifically, FDIC-Corporate argues that "money damages are not an available relief under the APA" and the relief sought by Plaintiffs is "nonetheless unavailable." (*Id.*) FDIC-Corporate's Motion misconstrues the relief sought by Plaintiffs as well as the scope of the APA.

    **1.**    **The Relief Is "Allowable" under Section 702 of the APA**

Section 702 of the APA provides in relevant part:

> A person suffering from a legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.

5 U.S.C. § 702. Importantly, Plaintiffs are not seeking an award of "money damages" under the APA.

Instead, Plaintiffs are asking the Court to review the conduct of FDIC-Corporate (and FDIC-Receiver) in connection with Plaintiffs' investments in the Bank and determine—after Plaintiffs are afforded discovery and an opportunity to present their claims on the merits—if such conduct violated Section 706 of the APA by, among other things: (i) giving Plaintiffs false hope as to the financial condition of the Bank while encouraging Plaintiffs' investment in it, and (ii)

improperly using Plaintiffs' investments to offset loss to the Deposit Insurance Fund. *See id.* § 706. If Plaintiffs prevail, then Plaintiffs will ask the Court for the return of their investments, which is proper under Section 706. *See Sterling v. U.S.*, 749 F. Supp. 1202, 1207 (E.D.N.Y. 1990) (action under Section 702 of the APA seeking return of money taken in a seizure was not an action for "money damages"); *see also America's Cmty. Bankers v. FDIC*, 200 F.3d 822, 831 (D.C. Cir. 2000) (action under Section 702 of the APA seeking refund was not an action for "money damages").

FDIC-Corporate's arguments, as well as its reliance on *Bowen v. Massachusetts*, 487 U.S. 879 (1988), and *Department of Army v. Blue Fox, Inc.*, 525 U.S. 255 (1999), are misplaced. In *Bowen*, the U.S. Supreme Court refused to interpret "money damages" and barring "monetary relief" under the APA. *Bowen*, 487 U.S. at 897–98. "Money damages" means "a sum of money used as compensatory relief . . . to *substitute* for a suffered loss. *Id.* at 895 (emphasis in original). "Monetary relief," on the other hand, is a specific remedy—to give the plaintiff the very thing to which he was entitled, *e.g.*, an action to compel an official to repay money improperly received. *Id.* at 895–96. Thus, "[t]he fact that a judicial remedy may require one party to pay money to another is not a sufficient reason to characterize the relief as 'money damages.'" *Id.* at 893. *Bowen* is analogous to and actually supports Plaintiffs' claims.

In *Blue Fox*, the U.S. Supreme Court was asked to determine whether a subcontractor's request for an "equitable lien" against government funds (in which the insolvent prime contractor failed to pay the subcontractor for work performed on a project for the Department of the Army) equated to "money damages" or "monetary relief" under Section 702 of the APA. *Blue Fox*, 525 U.S. at 256–57. The U.S. Supreme Court held that a claim for an equitable lien was "money damages" within the meaning of Section 702 of the APA because it does not "give the plaintiff

the very thing to which he was entitled." *Id.* at 262–63 (citing *Bowen*, 487 U.S. at 895).  Rather, "it merely grants a plaintiff 'a security interest in the property, [which the plaintiff] can then use to satisfy a money claim . . . .'" *Id.* (citations omitted).  *Blue Fox* is not analogous and neither supports nor precludes Plaintiffs' claims.

Lastly, FDIC-Corporate's passing citations to *Sinah v. Defense Logistics Agency*, No. 08 C 5487, 2009 WL 780655, at *1 (N.D. Ill. Mar. 23, 2009), *Czerkies v. United States  Department of Labor*, 73 F.3d 1435 (8th Cir. 1996), *United States v. Park Place Associates, Ltd.*, 563 F.3d 907 (9th Cir. 2009), and *Normandy Apartments, Ltd. v. U.S. Department of Housing and Urban Development*, 554 F.3d 1290 (10th Cir. 2009), do not compel a different result.  The plaintiff in *Sinah* admittedly sought "money damages" from Defense Logistics Agency and two other federal agencies for alleged breaches of contract in contravention of Section 702 of the APA, *Sinah*, 2009 WL 780655, at *1,  and the section of the opinion cited by FDIC-Corporate in *Czerkies* is pure dictum because the plaintiff did not seek, and the court did not construe, that the complaint was seeking "money damages," *Czerkies*, 73 F.3d at 1438.  *Park Place* simply rejected litigant's attempt to have an arbitration award confirmed using the APA, *Park Place*, 563 F.3d at 929–30, and in *Normandy,* the court held that the plaintiff's claim to prevent HUD from terminating the payment of benefits was "monetary relief," and not "money damages."

## 2.    <u>The Relief Is "Available" under Section 706 of the APA</u>

Section 706 of the APA provides in relevant part:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action.  The reviewing court shall—
>
> (1) compel agency action unlawfully withheld or unreasonably delayed; and

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law;

(B) contrary to constitutional right, power, privilege, or immunity;

(C) in excess of statutory jurisdiction, authority, or limitation, or short of statutory right;

(D) without observance of procedure required by law;

(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

5 U.S.C. § 706.  Notwithstanding FDIC-Corporate's assertions to the contrary, the relief that Plaintiffs seek is available under Section 706.

Specifically, Plaintiffs ask the Court to review FDIC-Corporate's (and FDIC-Receiver's) conduct in connection with:  (i) the false assurances given by FDIC-Corporate in connection with Plaintiffs' substantial efforts to increase the Bank's capitalization ratings, (ii) refusal to allow the Bank to redeem the Notes, (iii) application of the Plaintiffs' funds to the Deposit Insurance Fund, and (iv) summary rejection of Plaintiffs' detailed Proofs of Claims.  Plaintiffs allege that FDIC-Corporate was legally required to act on repeated requests to redeem the Notes, but ignored such requests even though the Notes no longer counted as Tier 2 capital and redemption would serve the Bank's interests.  (Compl. ¶¶ 28–29.)  Plaintiffs further allege that FDIC-Corporate did so because of an improper motive (lessening the loss to the Deposit Insurance Fund) and that the delay, which resulted in a de facto rejection because of the Bank's closure, was arbitrary,

- 8 -

capricious, and on abuse of discretion and not otherwise in accordance with the law.  (*Id.* ¶¶ 44–45, 50–52.)  Lastly, Plaintiffs allege that FDIC-Receiver improperly rejected Plaintiffs' Proofs of Claims, which detailed FDIC-Corporate's wrongdoing in furtherance of improper motive.  (*Id.* ¶¶ 36–37.)

Under 12 U.S.C. § 1828(i), the Bank was obligated to seek FDIC-Corporate's permission to redeem the Notes.  *See* 12 U.S.C. § 1828(i).  In turn, FDIC-Corporate was obligated to respond to that request.  *Id.*  Therefore, *Antonishin v. Keisler*, 627 F. Supp. 2d 872, 878 (N.D. Ill. 2007), is factually distinguishable.

Moreover, Plaintiffs are not seeking to "substitute" redemption for treatment of the Notes as deposits.  (FDIC-Corporate's Memo. at 9.)  If FDIC-Corporate allowed the Notes to be redeemed (as Plaintiffs allege it should have done), then the proceeds would have been on deposit with the Bank (as represented by the Bank to FDIC-Corporate).  Since FDIC-Receiver chose to transfer all deposits to United Central, the deposit would simply follow that same course.

FDIC-Corporate's result-driven interpretation of the Complaint, which also includes improper reliance on matter from outside of the Complaint (*i.e.*, "[a]s FDIC-Corporate was considering this application [for redemption], on July 31, 2009, the IDFPR closed the Bank" (FDIC-Corporate's Memo. at 5)), should be rejected.  FDIC-Corporate may not rely on a "straw man" argument to support its Motion.

### C.    Plaintiffs Have Article III and Prudential Standing

FDIC-Corporate's next and final argument is that Plaintiffs lack standing to pursue the Complaint.  This argument is without merit.

1. **Plaintiffs Have Article III Standing**

As an initial matter, FDIC-Corporate's argument that Plaintiffs lack standing because Plaintiffs "cannot get monetary damages under the APA" is simply a rehash of FDIC-Corporate's faulty "money damages" argument.  As set forth above, Plaintiffs seek *monetary relief* (return of their investments) and "[t]he fact that a judicial remedy may require one party to pay money to another is not a sufficient reason to characterize the relief as 'money damages.'" *Bowen*, 487 U.S. at 893.  This Court can and should "help" Plaintiffs.  (FDIC-Corporate's Memo. at 10.)

Further, Plaintiffs' claims are not "derivative."  (*Id.* at 11.)  Plaintiffs do not seek to recover the loss of their stock occasioned by or through the Bank and/or First Mutual.  Rather, this is a direct action for the return of specific investments that Plaintiffs made as a result of the false hopes given by FDIC-Corporate, which FDIC-Corporate and FDIC-Receiver allegedly intended to and did use to offset losses to the Deposit Insurance Fund.

2. **Plaintiffs Have Prudential Standing**

Plaintiffs also do not lack "prudential standing."  "Exactly what this limitation entails has been less than self-evident."  *Am. Fed. of Gov. E'ees, Local 2119 v. Cohen*, 171 F.3d 460, 468 (citing *Nat'l Credit Union Admin. v. First Nat'l Bank & Trust*, 522 U.S. 479 (1998)).  The test for prudential standing, commonly referred to as "the zone of interest" test, is "deceptively difficult to apply."  *Id.*

The U.S. Supreme Court in *Clarke v. Securities Industry Association*, 499 U.S. 388, 399–400 (1987), described the test as follows:

> The "zone of interest" test is a guide for deciding whether, in view of Congress' evident intent to make agency action presumptively reviewable, a particular plaintiff should be heard to complain of a particular agency action.  In cases where the plaintiff is not itself the subject of the contested regulatory action, the test denies a right of review if the plaintiff's interests are so marginally related to

- 10 -

or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit.  The test is not meant to be particularly demanding; in particular, there need be no indication of congressional purpose to benefit the would-be plaintiff.

While FDIC-Corporate quotes *Clarke* as a leading authority on the test, FDIC-Corporate omits reference to the last sentence of the above-quoted paragraph, then proceeds to argue that because Plaintiffs were not the "subject" of any "regulatory action," they have no prudential standing.  (FDIC-Corporate's Memo. at 12–13.)  This is an unreasonably narrow and result-driven application of the "zone of interest" test, which should be rejected.

Plaintiffs' interests are anything but "marginally related."  Plaintiffs were, among other things, the majority shareholders in the Bank's holding company (which owned 100 percent of the Bank) and owners of the Notes directly with the Bank.  (Compl. ¶¶ 11, 20.)  The requests made to FDIC-Corporate by the Bank's Board to redeem the Notes were made for the benefit of both the Bank and Plaintiffs because the Notes no longer served as Tier 2 capital.  (*Id.* ¶¶ 26, 28–29, 31.)  As FDIC-Corporate concedes, the "adequacy of [the Bank's] capital structure" and "the convenience and needs of the community . . . served" are factors to be considered by FDIC-Corporate when determining whether the Notes should be redeemed.  (FDIC-Corporate's Memo. at 13.)  Clearly, Plaintiffs, who invested in and are members of the community served by the Bank, fall within the "zone of interest."[3]

Lastly, while FDIC-Corporate may have an interest in protecting the Deposit Insurance Fund (FDIC-Corporate's Memo. at 14), nothing gives FDIC-Corporate the power or right to give Plaintiffs false hopes of recovery or encourage Plaintiffs to invest tens of millions of dollars into

---

[3] On page 13 of its Memorandum, FDIC-Corporate states that the court in *Cohen* "examin[ed] the statutes at issue."  (FDIC-Corporate's Memo. at 13.)  This statement is incorrect.  The statutes examined in *Cohen* were 10 U.S.C. §§ 2304 (Competition in Contracting Act), 2462 ("private procurement statute"), and 4532 (Arsenal Act).  *Cohen*, 171 F.3d at 469–75.

the Bank so it can be used to offset future losses to the Deposit Insurance Fund.  Congress did

not grant FDIC-Corporate or FDIC-Receiver a license to steal.

**IV.** **CONCLUSION**

The Complaint states claims against FDIC-Corporate upon which relief can be granted.

Also, Plaintiffs have Article III and prudential standing to bring those claims.  FDIC-Corporate's

Motion should be denied.

Respectfully submitted,

PETHINAIDU VELUCHAMY,
PARAMESWARI VELUCHAMY, ARUN K.
VELUCHAMY, ANU VELUCHAMY and the
VELUCHAMY FAMILY FOUNDATION

By: /s/Diane M. Kehl
One of Their Attorneys

Diane M. Kehl
Chad A. Schiefelbein
Vedder Price P.C.
222 North LaSalle Street, Suite 2600
Chicago, Illinois 60601
Telephone:  (312) 609-7500
Fax:  (312) 609-5005

CHICAGO/#2060320.2

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that a true and correct copy of Plaintiffs' Opposition to the

FDIC-Corporate's Motion to Dismiss was served on:

Alan Francis Curley                     Daniel Harold Kurtenbach
Aleeza M. Strubel                       Federal Deposit Insurance Corporation
Robinson Curley & Clayton, P.C.         3501 Fairfax Drive
300 South Wacker Drive                  Room Vs-d7026
Suite 1700                              Arlington, Virginia 22226
Chicago, Illinois 60606


United States Attorney's Office         John Spencer Stevens
219 South Dearborn Street               Federal Deposit Insurance Corporation
Suite 500                               300 South Riverside Plaza
Chicago, Illinois 60604                 Suite 1700
                                        Chicago, Illinois 60606

via electronic means on May 11, 2010.


                                    s/Diane M. Kehl

CHICAGO/#2060320.2