IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PETHINAIDU VELUCHAMY, )
PARAMESWARI VELUCHAMY, ARUN K. )
VELUCHAMY, ANU VELUCHAMY, and )
the VELUCHAMY FAMILY FOUNDATION, )
)
    Plaintiffs, ) No. 10 C 648
)
v. ) The Honorable William J. Hibbler
)
FEDERAL DEPOSIT INSURANCE CORP., )
in its capacity as receiver for Mutual Bank, )
Harvey, Illinois, and in its corporate capacity, )
)
    Defendant. )

## MEMORANDUM OPINION AND ORDER

Plaintiffs are a number of the members of the Veluchamy family and their family foundation. Collectively they own 93.2% of First Mutual Bancorp of Illinois, which was formerly the sole owner of Mutual Bank in Harvey, Illinois. In 2009, the Illinois Department of Financial and Professional Regulation (IDFPR) declared Mutual Bank insolvent and appointed the Federal Deposit Insurance Corporation (FDIC) as the receiver of the bank. In the months preceding that declaration, Plaintiffs invested a large amount of money in Mutual Bank in an attempt to save it from insolvency. They claim that they were misled into investing that money by the FDIC, who then improperly refused them an opportunity to recover their investment prior to the bank's downfall. For that reason, they filed this suit, seeking recovery of those funds. They set forth claims under the Administrative Procedure Act (APA), 5 U.S.C. § 701 *et seq.*, and the Financial Institutions Reform, Recovery and Enforcement Act (FIRREA), 12 U.S.C. § 1821(d)(6)(A), and seek a declaratory judgment pursuant to 28 U.S.C. § 2201(a). They bring

1

their claims against the FDIC in its corporate capacity as a federal agency ("FDIC-Corporate") and in its capacity as the receiver for Mutual Bank ("FDIC-Receiver").[1] Both Defendants now move the Court to dismiss the case. For the reasons stated below, the Court grants both motions.

## BACKGROUND

Plaintiffs' complaint alleges the following relevant facts. On June 30, 2008, Mutual Bank submitted its quarterly report on the condition of the bank to the FDIC. *See* 12 U.S.C. § 1817(a) (requiring the submission of such reports). Thereafter, FDIC-Corporate notified the bank that it was no longer "well capitalized" pursuant to the Prompt Corrective Action (PCA) provisions of the Federal Deposit Insurance Act, 12 U.S.C. § 1831o, and the corresponding regulations, 12 C.F.R. § 325.101 *et seq.* Instead, FDIC-Corporate determined that the bank was "adequately capitalized," placing it in the next highest capital category. *See* 12 U.S.C. § 1831o(b)(1). FDIC-Corporate advised the bank that it would need an additional $30 million of capital in order to fall into the "well capitalized" category.

In the following months, Plaintiffs employed a variety of means to infuse the bank with millions of dollars of capital. Among other things, they purchased notes issued by the bank and additional shares of the Bank's parent corporation, First Mutual. On September 30, 2008, FDIC-Corporate determined that, as a result of those transactions, the bank was once again "well capitalized."

Then, in late 2008, IDFPR and FDIC-Corporate issued a cease and desist order directing the bank to develop a capital plan. Following a preliminary response by the bank in February 2009, the two agencies once again advised the bank that it was no longer "well capitalized" and issued a Section 51 order stating that it intended to take possession and control of the bank if the

---

[1] As explained more fully below, FDIC-Corporate and FDIC-Receiver are two separate entities for purposes of litigation. *See Fed. Deposit Ins. Corp. v. Ernst & Young LLP*, 374 F.3d 579, 581 (7th Cir. 2004).

2

bank did not increase its capital ratios by May 11, 2009. *See* 205 ILCS § 5/51 (authorizing such action by IDFPR).

In March 2009, some of the plaintiffs purchased additional notes and shares from the bank and First Mutual in an attempt to meet the demands of IDFPR and FDIC-Corporate. In April 2009, FDIC-Corporate found the bank to be "adequately capitalized," and IDFPR stopped the Section 51 proceedings. However, in the meantime, at the direction of the IDFPR and FDIC-Corporate, the bank hired an independent consulting company to review their construction and development portfolio. On April 28, 2009, the company reported that the bank needed an additional $70 million in capital. Plaintiffs allege that FDIC-Corporate's recommendation that they hire the consulting company and the company's report were improperly influenced by communications between the company and FDIC-Corporate stemming from a conflict of interest created by a former FDIC-Corporate examiner who worked for the company. On May 12, IDFPR issued a second Section 51 order stating its intent to take over the bank within 60 days. On June 3, FDIC-Corporate issued a PCA notification informing the bank that it fell within the "critically undercapitalized" category.

On July 1, the bank's board of directors held a special meeting and decided that it was in the bank's interest to redeem the notes that Plaintiffs had purchased. On July 2, pursuant to 12 U.S.C. § 1828(i), the bank submitted an application to FDIC-Corporate for permission to do so. FDIC-Corporate refused to act on the application even after a second request from the bank on July 24. It did not provide the bank with any explanation regarding its inaction.

On July 31, 2009, IDFPR declared the bank insolvent and appointed FDIC-Receiver as the receiver of the bank. The same day, FDIC-Receiver entered into a Purchase and Assumption Agreement with United Central Bank. As part of the agreement, United Central Bank agreed to

3

assume all of the bank's deposits. FDIC-Receiver also entered into a loss-share transaction with United Central on approximately $1.3 billion of Mutual Bank's assets. On August 1, 2009, Mutual Bank's branches opened as branches of United Central Bank.

On November 3, 2009, Plaintiffs each filed a Proof of Claim with FDIC-Receiver. On December 3, 2009, FDIC-Receiver sent notice that it was disallowing each of the claims because "there was no evidence presented in that the Receiver was acting outside its discretion in the liquidation of the Receivership including its obligations to the depositors and creditors of the Bank."

## *DISCUSSION*

### I. Standard of review

Both defendants move to dismiss Plaintiffs' complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. FDIC-Corporate also moves for dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction. Motions to dismiss test the sufficiency, not the merits, of the case. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In ruling on a motion to dismiss brought under either rule, the Court treats well-pleaded allegations as true, and draws all reasonable inferences in the plaintiff's favor. *Disability Rights Wisc., Inc. v. Walworth County Bd. Of Supervisors*, 522 F.3d 796, 799 (7th Cir. 2008) (motions regarding failure to state a claim); *Sprint Spectrum L.P. v. City of Carmel*, 361 F.3d 998, 1001 (7th Cir. 2004) (motions regarding lack of subject matter jurisdiction).

In order to survive a motion to dismiss for failure to state a claim, a plaintiff must "provide the grounds of his entitlement to relief" by alleging "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007) (internal quotation marks, brackets, and citation omitted).

4

Specific facts are not necessary. *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007).

In order to survive a motion to dismiss for lack of subject matter jurisdiction, a plaintiff must "clearly allege facts that invoke federal court jurisdiction." *Sprint Spectrum L.P.*, 361 F.3d at 1001. The Court "presume[s] that federal courts lack jurisdiction unless the contrary appears from the record." *Id.* (internal quotation omitted). The Court may consider any relevant evidence the parties submit. *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007) (quoting *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir.1999)). However, the parties have submitted no evidence in this case, so the Court relies only on the well-pleaded allegations in the complaint.

## II. The multiple roles of the FDIC

For purposes of this case, the FDIC operates in two separate legal capacities, referred to here as FDIC-Corporate and FDIC-Receiver. *Fed. Deposit Ins. Corp. v. Wright*, 942 F.2d 1089, 1091 n.1 (7th Cir. 1991). FDIC-Corporate insures the accounts of a bank's depositors and is subrogated to the rights of the depositors against the failed institution. *Id.*; *Ernst & Young LLP*, 374 F.3d at 581. "FDIC-Receiver acquires the assets and legal interests of the failed bank and proceeds much as a trustee in bankruptcy." *Ernst & Young LLP*, 374 F.3d at 581. In dicta, the Seventh Circuit has also described the FDIC as acting in a "third capacity as bank overseer and regulator." *Ernst & Young LLP*, 374 F.3d at 581. Some of the decisions that the parties ascribe to FDIC-Corporate in this case, such as the decision of whether to approve the bank's request to redeem and retire its notes, are akin to those of a regulator. Nonetheless the Court treats those decisions as the decisions of FDIC-Corporate for a number of reasons. First, the parties agree that the FDIC was acting in that capacity in this case. Given that Plaintiffs chose to sue FDIC in

its corporate capacity, the Court needs to address the law only as it applies to FDIC-Corporate. Second, given that the Court's decision ultimately rests on the issue of standing, the result would not differ if FDIC were acting in its capacity as an overseer and regulator. Finally, outside of the brief mention of this third capacity in a parenthetical comment in *Ernst & Young*, the Court cannot find any other mention of it. Thus, it seems likely that the FDIC's role as overseer and regulator is not usually relevant to the actions taken in winding up the affairs of an insolvent bank. *See Wright*, 942 F.2d at 1091 n.1 (describing only the roles of FDIC-Receiver and FDIC-Corporate in that context).

### III. FDIC-Receiver's Motion

Plaintiffs bring Counts I and II of their complaint pursuant to the APA, 5 U.S.C. § 701 *et seq*. However, claims such as those Plaintiffs filed with FDIC-Receiver are not governed by the APA; they are governed by the FIRREA. 12 U.S.C. §§ 1821(d)(6)(A), 1821(d)(13)(D); *see also Freeman v. Fed. Deposit Ins. Corp.*, 56 F.3d 1394, 1400 (D.C. Cir. 1995) (holding that the review procedures outlined in § 1821 of the FIRREA are the only method for bringing a claim against the assets of a failed bank). Plaintiffs cite *James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1094 (D.C. Cir. 1996), for the proposition that the APA can be applied to FDIC-Receiver when it has abused its powers. However, *James Madison Ltd.* simply allows for suit under the APA in order to challenge the appointment of FDIC as receiver, not to challenge the FDIC-Receiver's actions on behalf of a failed bank. *Id.* Thus, the Court grants FDIC-Receiver's motion to dismiss as to Counts I and II.

In Count III, Plaintiffs attempt to make a claim against FDIC-Receiver under § 1821(d)(6)(A) of the FIRREA. That section allows the Court to make a *de novo* determination regarding Plaintiffs' claims. *See Helm v. Resolution Trust Corp.*, 43 F.3d 1163, 1165 (7th Cir.

1995).² In other words, the Court does not review FDIC-Receiver's decision, but makes its own determination of the underlying claim on its merits. *Id.* Plaintiffs do not state any facts supportive of such a claim in their complaint, however. In fact, they plead themselves out of court. As noted above, FDIC-Receiver acts "much as a trustee in bankruptcy" in reviewing and deciding claims. *Ernst & Young LLP*, 374 F.3d at 581. In doing so, it "steps into the shoes" of the bank, *O'Melveny & Myers v. Fed. Deposit Ins. Corp.*, 512 U.S. 79, 86, 114 S.Ct. 2048, 2054, 129 L.Ed.2d 67 (1994), and "succeed[s] to... all rights, titles, powers, and privileges of the insured depository institution," 12 U.S.C. § 1821(d)(2)(A). Plaintiffs filed Proofs of Claim with FDIC-Receiver requesting redemption of the notes discussed above. But, as Plaintiffs note in their complaint, Mutual Bank could not redeem those notes without approval of FDIC-Corporate, *see* 12 U.S.C. § 1828(i), which they did not receive. Thus, once it stepped into the shoes of the bank, FDIC-Receiver was similarly constrained. Its role was to determine whether the Plaintiffs had a claim against the bank and, given the fact that the bank did not have permission to redeem the notes, it correctly decided that they did not.

In order for Plaintiffs to succeed on a claim under the FIRREA, the Court would have to determine first that FDIC-Corporate's decision not to approve the bank's request to redeem the notes was wrong. Then, the Court would have to examine the claims disallowed by FDIC-Receiver as if they were presented in a different factual context where FDIC-Corporate had made the proper decision. Indeed, this is essentially what Plaintiffs request in Count IV of their complaint, which seeks a declaratory judgment under 28 U.S.C. § 2201(a). By granting such relief, however, the Court would meddle in the actions of FDIC-Receiver in a way that likely

---

² Although *Helm* concerns review of claims brought before the Resolution Trust Corporation (RTC), rather than the FDIC, the case law is applicable here. The RTC also had the power to disallow claims pursuant to 12 U.S.C. § 1821(d)(5)(D). *Helm*, 43 F.3d at 1165. However, the RTC ceased to exist on December 31, 1995 and the FDIC succeeded to its rights as a receiver the following day. 12 U.S.C. § 1441a(m)(1).

7

exceeds the Court's authority. Congress has expressly limited the Court's powers to "restrain or affect the exercise of powers or functions" of FDIC-Receiver to those enumerated in § 1821 of the FIRREA. 28 U.S.C. § 1821(j). The Seventh Circuit has recognized the breadth and importance of this limitation in allowing the FDIC to function in its role as a receiver, citing the D.C. circuit for its description of § 1821(j) as a "sweeping ouster of courts' power to grant equitable remedies" and declaratory relief. *Courtney v. Halleran*, 485 F.3d 942, 948 (7th Cir. 2007) (citing *Freeman*, 56 F.3d at 1399). No court has addressed the section's effect on a suit seeking the specific type of relief requested by Plaintiffs' here. Nonetheless, § 1821(j) and *Courtney* indicate that the Court's powers are sufficiently limited that it cannot reverse the decision of the FDIC-Receiver on a claim when that decision was made correctly based on the facts presented to the FDIC-Receiver at the time. The Court cannot circumvent that limitation on the basis of its retroactive determination that the factual context for the decision would have been different if FDIC-Corporate had made the right decision.

Thus, the Court also grants FDIC-Receiver's motion to dismiss as to Counts III and IV of the complaint.

### IV. FDIC-Corporate's Motion

As noted above, Plaintiffs allege that FDIC-Corporate misled them by encouraging them to invest in the bank despite its impending failure. According to the complaint, FDIC-Corporate then improperly refused to approve the bank's decision to redeem the notes issued on those investments. Thus, even assuming that Plaintiff's allegations are correct, FDIC-Corporate does not owe payment to Plaintiffs or to the bank. Plaintiffs actually argue that FDIC-Receiver is the party that must repay its investment. For the reasons discussed above, however, the Court cannot order FDIC-Receiver to redeem the notes. Thus, the Court cannot provide Plaintiffs the relief

8

they seek in their suit against FDIC-Corporate. Article III of the Constitution requires Plaintiffs to show more than an injury in order to establish standing to file suit; they must demonstrate "a likelihood that the injury will be redressed by a favorable decision." *Wis. Right to Life, Inc. v. Schober*, 366 F.3d 485, 489 (7th Cir. 2004) (internal quotations omitted). Therefore, Plaintiffs lack standing and the Court grants FDIC-Corporate's motion to dismiss for lack of subject matter jurisdiction.

## CONCLUSION

For the above reasons, the Court GRANTS Defendants' motions to dismiss.

IT IS SO ORDERED.

11/10/10
Dated

Hon. William J. Hibbler
United States District Court